12-3343-cv
Cichocki v. Astrue

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of September, two thousand thirteen.

PRESENT:

GUIDO CALABRESI,
DEBRA ANN LIVINGSTON,
GERARD E. LYNCH,

*Circuit Judges.*

_____

MELANIE CICHOCKI,

*Plaintiff-Appellant*,

-v.-                                                          No. 12-3343-cv

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee*.

_____

JAYA A. SHURTLIFF, Law Offices of Kenneth Hiller, PLLC, Amherst, New York, *for Plaintiff-Appellant*.

DENNIS J. CANNING, Special Assistant U.S. Attorney (STEPHEN P. CONTE, Regional Chief Counsel, Social Security Administration, *on the brief*) *for* WILLIAM J. HOCHUL, JR., United States Attorney for the Western District of New York, *for Defendant-Appellee*.

1

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the District Court is **AFFIRMED**.

Plaintiff-Appellant Melanie Cichocki ("Cichocki") appeals from a judgment of the United States District Court for the Western District of New York (Skretney, *J.*), entered July 30, 2012, dismissing her complaint challenging the denial of disability insurance benefits under Title II of the Social Security Act (the "SSA" or "Act"), 42 U.S.C. § 401 *et seq.* Cichocki contends that the district court erred in finding that substantial evidence supported the decision of Administrative Law Judge William Weir ("ALJ") that Cichocki was not disabled under sections 216(i) and 223(d) of the Act. Cichocki presents four principal arguments on appeal: (1) that substantial evidence does not support the ALJ's determination that Cichocki's bipolar disorder is not a severe impairment; (2) that the ALJ improperly assessed Cichocki's credibility; (3) that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence and that the ALJ's failure to conduct a function-by-function assessment as part of his RFC determination requires remand; and (4) that, in light of these other errors, the ALJ erred in concluding that Cichocki is capable of performing her past work as a bakery clerk. The third argument is addressed in a per curiam opinion that accompanies this summary order. We assume the parties' familiarity with the underlying facts and procedural history of the case, and with the issues on appeal, which we discuss only as necessary to explain our decision to affirm.

\* \* \*

In reviewing a denial of disability benefits, we conduct a plenary review of the record and "focus on the administrative ruling rather than the district court opinion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). We will affirm the denial of benefits

2

if the decision is supported by substantial evidence. *Id.* "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted).

A claimant is disabled and entitled to benefits if he is unable to "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Federal regulations set forth a "five-step sequential evaluation process" that guides an ALJ's determination of whether a claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ must consider whether the claimant is performing substantial gainful activity. *Id.* If so, the claimant is deemed not disabled, and the inquiry ends. At step two, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement." *Id*. If not, the claimant is deemed not disabled, and the inquiry ends. At step three, the ALJ must consider whether the claimant's severe impairments meet or equal one of the enumerated disabilities listed in an Appendix 1 of Subpart P to 20 C.F.R. § 404. *Id.* If so, and if the impairment is of sufficient duration, the claimant is deemed disabled, and the inquiry ends. At step four, the ALJ must assess the claimant's residual functional capacity to perform work. If the claimant's RFC permits him to perform his past relevant work, then the claimant is deemed not disabled, and the inquiry ends. *Id.* Finally, at step five, the ALJ must consider the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." *Id.* If he can make an adjustment, he is deemed not disabled. If he cannot, he is deemed disabled.

The claimant bears both "the general burden of proving that he or she has a disability within the meaning of the Act" and the specific "burden of proving his or her case at steps one through four of the sequential five-step framework." *Burgess*, 537 F.3d at 128 (internal quotation marks and citation omitted).

1. *Severity of Bipolar Disorder and Treating Physician Rule*

Cichocki argues that the ALJ erred in step two of his analysis when he determined that her bipolar disorder did not constitute a severe impairment. Specifically, Cichocki contends that the ALJ improperly discounted the medical source statement of her treating physician Dr. Dham Gupta – which indicated that Cichocki's bipolar disorder would moderately limit her ability to perform a number of tasks – and that the resulting determination was not supported by substantial evidence. We disagree.

The treating physician rule provides that an ALJ should defer to "to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Rather, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess*, 537 F.3d at 128 (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts" (internal alterations, quotation marks, and citation omitted)). An "ALJ who refuses

4

to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion," including: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted).

A careful review of the record reveals that the ALJ properly applied the treating physician rule. Because Dr. Gupta's medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight. The ALJ could therefore afford weight to the expert opinion provided by Dr. Baskin. Moreover, since the ALJ comprehensively explained the reasons for discounting Dr. Gupta's medical source statement, he complied with the dictates of the treating physician rule. *See Burgess*, 537 F.3d at 129. Dr. Baskin's evaluation, which concludes that Cichocki's psychiatric problems would not interfere with her ability to function on a daily basis, *see* Joint Appendix (J.A.) at 437, directly contradicts Dr. Gupta's medical source statement. Dr. Gupta's own treatment note, moreover, provide that, apart from a few isolated instances of decompensation, Cichocki's bipolar disorder was effectively managed through medication and therapy from 2002 through 2010.

Given that the ALJ was not required to give controlling weight to Dr. Gupta's medical source statement, he likewise did not err in determining that Cichocki's bipolar disorder was not a severe mental impairment. Even though Dr. Gupta's medical source statement provides some support for

Cichocki's claim, our inquiry focuses on whether substantial evidence supported the ALJ's decision. Based on the record here, we defer to the ALJ's well-supported determination. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve [conflicting medical evidence]."); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

2. *Credibility Determination*

Cichocki next argues that the ALJ should have credited her statements regarding the "intensity, persistence, and limiting effects" of her symptoms. She claims remand is required because the ALJ mischaracterized the record and applied the incorrect legal standard when he failed to cite the seven factors relevant to assessing the credibility of a claimant's statements about her symptoms. We disagree. Although the ALJ did not explicitly recite the seven relevant factors, his credibility determination was supported by substantial evidence in the record.

It is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms. *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). Social Security regulations provide a two-step process for evaluating symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness. First, the ALJ must determine whether the medical signs or laboratory findings show that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. If so, the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine the extent to which the symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1). The ALJ is required to consider all available evidence, including the claimant's history, medical signs and laboratory findings, and statements from the claimant, the claimant's treating or nontreating source,

or other persons about how the symptoms affect the claimant. *Id.* Objective medical evidence is useful, but the ALJ will not reject statements about the intensity and persistence of pain and other symptoms "solely because the available objective medical evidence does not substantiate [the claimant's] statements." *Id.* § 416.929(c)(2). However, if a claimant's statements about his or her symptoms are not substantiated by the objective medical evidence, the ALJ must consider the other evidence and make a finding on the credibility of the individual's statements. *See* SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In doing so, the ALJ should consider:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [the claimant's] pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve pain or other symptoms . . . ; and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. While it is "not sufficient for the [ALJ] to make a single, conclusory statement that" the claimant is not credible or simply to recite the relevant factors, *id.* at *2, remand is not required where "the evidence of record permits us to glean the rationale of an ALJ's decision," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

7

Here, the ALJ concluded that Cichocki's medical impairments could cause the symptoms she alleged, but declined to credit her testimony regarding the intensity, persistence, and limiting effects of the symptoms to the extent they were inconsistent with the medical evidence, including the medical assessments and treatment notes. While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination, including that the treatment notes, both from before and after Cichocki's seizure, indicate that her bipolar disorder was managed with medication and did not affect her sleep, appetite, or ability to do chores. Because the ALJ thoroughly explained his credibility determination and the record evidence permits us to glean the rationale of the ALJ's decision, the ALJ's failure to discuss those factors not relevant to his credibility determination does not require remand.

3. *Capacity to Perform Past Work as a Bakery Clerk*

Cichocki's final argument is that the ALJ erred in determining her capable of performing her past work as a bakery clerk.[1] Cichocki claims that the ALJ did not perform a "specific and substantial inquiry" into the demands of her prior work, and was required to consult a vocational expert and further develop the record. We disagree.

A review of the record establishes that Cichocki is capable of performing her past work as a bakery clerk. Cichocki's own work history report establishes that as a bakery clerk, she frequently lifted less than 10 pounds, never lifted more than 20 pounds, and never had to climb, kneel, crouch,

---

[1] The ALJ determined that Cichocki was capable of performing her past work as either a bakery clerk or a supermarket cashier. As the district court noted, Cichocki's RCF, as determined by the ALJ, indicated she was unable to perform the work of a supermarket cashier, which requires the ability to lift up to 50 lbs. The ALJ's determination that Cichocki could perform this work constitutes harmless error, however, because the ALJ correctly determined that she was capable of performing her past work as a bakery clerk.

8

or crawl.  These demands qualify this work as "light work," which, according to her RFC, she is capable of performing.  *See* 20 C.F.R. § 404.1567(b).  While Cichocki is correct that the ALJ did not consult a vocational expert, he was not required to do so. *See* 20 C.F.R. § 404.1560(b);  *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) ("While an expert is often called upon to explain the requirements of particular jobs, step four . . . does not *require* that an ALJ consult an expert." (internal quotation marks and citations omitted)).  Moreover, because substantial evidence, including Cichocki's own work history, supported his determination, the ALJ was not under a duty to further develop the record.  *See Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (holding that the ALJ was not required to further develop record by seeking additional medical records where the evidence already in record was "adequate for him to make a determination as to disability").

We have reviewed Cichocki's remaining arguments and find them to be without merit.  For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9